**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**JERRY RAY**, individually, and on behalf of others similarly situated,

Plaintiff,

v.

**COX COMMUNICATIONS, INC.**, and **COX COMMUNICATIONS ARIZONA, LLC,** jointly and severally,

Defendants.

Case No:

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff, Jerry Ray ("Plaintiff"), hereby brings this Collective and Class Action Complaint against Cox Communications, Inc. ("Defendant Cox" or "Cox") and Cox Communications Arizona, LLC ("Defendant Cox Arizona" or "Cox Arizona") (collectively "Defendants") and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* Fed. R. Civ. P. 23, the Arizona Minimum Wage Act, A.R.S. §§ 23-363, *et seq*. ("AMWA"), the Arizona Wage Act, A.R.S. §§ 23-350, *et seq*. ("AWPA"), and

common law.

2. Defendant Cox Communications, Inc. holds itself out "[a]s [being] the largest private broadband provider in the United States[,]"[1] with a mission of "keeping people connected – through high-speed internet, managed services, smart home solutions, mobile phone services and much more."[2]

3. In providing the aforementioned services, Defendants employ non-exempt hourly employees with job titles that include, but are not limited to, Customer Care Specialist I & II, Customer Service Representative, Customer Retention and Sales Representative, Customer Retention Representative, Technical Customer Care Specialist, Senior Logistics Concierge and Inbound Sales Representative (collectively referred to "Representatives") in brick-in-mortar call centers and in remote call center settings across the United States. Defendants heavily relied on Representatives to, among other things, receive and respond to clients' customer service calls, troubleshoot inquiries, requests, and complaints, and log information about customer service interactions into Defendants' systems.[3]

4. Defendants employed Plaintiff as an hourly non-exempt

---

[1] *See* https://www.cox.com/aboutus/home.html (last visited Feb. 2, 2026).
[2] *See* https://jobs.coxenterprises.com/en/learn-about-us/businesses/cox-communications/ (last visited Feb. 2, 2026).
[3] Defendants' "Customer service teams answer client inquiries, resolve technical issues regarding [Defendants'] products and sell solutions that keep [Defendants'] customers happy." *See* https://jobs.coxenterprises.com/en/career-areas/client-customer-service/ (last visited Feb. 2, 2026).

Representative.

5. Defendants have employed hundreds of Representatives over the past three years to provide customer service support to Defendants' customers.

6. Regardless of specific job title, all Representatives: (1) are paid on an hourly basis; (2) classified as non-exempt employees; (3) regularly worked forty (40) or more hours per workweek; (4) used the same timekeeping system; (5) use many (if not all) of the same computer programs; (6) subject to the same relevant timekeeping and attendance policies; and (7) have the primary job duty of providing assistance to Defendants' customers.

7. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[4]

8. One of those abuses, which is present in this case is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

9. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first

---

[4] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited Jan. 13, 2026).

principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job related activities, must be kept." *Id*.

10. Throughout their employment with Defendants, Plaintiff and other Representatives were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

11. Defendants violated the FLSA and common law by systematically failing to compensate their Representatives for work tasks completed before and after their scheduled shifts, which resulted in Representatives not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

12. More specifically, Defendants failed to compensate their Representatives for the substantial time they spent performing essential work tasks prior to clocking into and after clocking out of Defendants' timekeeping system each shift.

13. Plaintiff seeks a declaration that his rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for

damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

14. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

## PARTIES

15. Plaintiff Jerry Ray is a resident of Sun City, Arizona and worked for Defendants as a remote, non-exempt retention agent from approximately September 2024 through approximately December 2024. Defendants compensated Plaintiff through the payment of an hourly rate, most recently $21.00 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

16. Additional putative collective members were or are employed by Defendants as Representatives during the past three (3) years and their consent to join forms will also be filed in this case.

17. Defendant Cox is a corporation registered to do business in Georgia, with its principal place of business located in Atlanta, Georgia. Defendant Cox maintains a registered agent for service of process listed as Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

18. Defendant Cox Communications is a limited liability company with its

principal place of business located in Tempe, Arizona. Defendant maintains a registered agent for service of process listed as Corporation Service Company, 7955 South Priest Drive, Suite 102, Tempe Arizona, 85284.

19. Defendant Cox Arizona has and continues to operate as a corporate division, subsidiary, or affiliate of Cox. On information and belief, Defendant Cox Arizona does not operate independently but is fully integrated into Cox's business operations. Cox and Cox Arizona jointly set employment policies, schedules, and compensation practices for Plaintiff and other Representatives.

20. Defendant Cox and Defendant Cox Arizona are "employers" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. Together, Defendants conduct business under the name Cox Communications and operate their business as a single, integrated enterprise.

22. Defendant Cox Arizona is a wholly owned subsidiary of and/or operating division of Defendant Cox. Upon information and belief, Defendant Cox Arizona operates as an integrated component of Defendant Cox's business process and customer support services, and is under the direct control and supervision of Defendant Cox.

## JURISDICTION AND VENUE

23. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question

under 29 U.S.C. § 201, *et seq.*

24. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer…in any Federal or State court of competent jurisdiction."

25. Defendants' annual sales exceed $500,000, and Defendants employ more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendants' Representatives engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

26. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

27. This Court has personal jurisdiction over Defendant Cox because Defendant Cox conducts business within this District and maintains its principal place of business in this District.

28. This Court has specific personal jurisdiction over Defendant Cox Arizona because: (1) Defendant Cox installed a leadership team[5] in the State of Georgia to manage and operate its facilities and operations; (2) Defendant Cox's Georgia leadership team has business functions related to and makes significant

---

[5] *See* https://newsroom.cox.com/leadership-team (last visited Feb. 2, 2026).

business decisions for Defendant Cox Arizona, including, but not limited to, those related to employee timekeeping and payroll policies; and (3) the assertion of personal jurisdiction over Defendant Cox Arizona will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

29. At all relevant times Cox and Cox Arizona jointly employed Plaintiff and all other Representatives within the meaning of the FLSA, 29 U.S.C. § 203(d), maintained centralized control over terms and conditions of employment, and acted in a unified manner with respect to employment practices, policies, supervision, scheduling, and payroll.

30. Defendants are engaged in a single, integrated "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. §§ 201, *et seq*.

31. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business within this District, employ Representatives in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

32. Prior to hiring prospective Representatives, including Plaintiff, Defendants provided them with a written offer setting forth the job title, the offered

rate of pay, and the conditions of their employment.

33. Upon information and belief, Defendants maintain documents demonstrating the promised hourly wage for each Representative, including, but not limited to: offer letters, paystubs, and/or payroll records.

34. Plaintiff and the Representatives received offer letters from Defendants to work as a Representatives, and they accepted Defendants' offers with the understanding that their base hourly rate would be paid for all hours worked.

35. Plaintiff and the Representatives performed under their respective agreements with Defendants by carrying out their job duties and responsibilities. More specifically, Plaintiff and the Representatives fielded incoming calls from, and made outbound calls to, Defendants' customers; incentivized customers to retain Defendants' services; and maintained records of customer interactions. Plaintiff and the Representatives utilized Defendants' applications and systems to track all events and customer service information. Plaintiff and the Representatives additionally performed the required unpaid off-the-clock work explained below.

36. Defendants paid their Representatives at varying hourly rates.

37. Defendants' Representatives typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

38. There were one or more instances during Plaintiff's employment when he worked forty (40) hours or more in a workweek.

39. Upon information and belief, Defendants utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

40. Defendants provided training to Representatives, like Plaintiff, on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of each day; how to track their time in Defendants' timekeeping system; attendance, schedule, and call quality expectations; and Defendants' policies related to each topic. The training that all of Defendants' Representatives received was substantially, if not entirely, the same, and Defendants' Representatives, including Plaintiff, were subject to the same relevant policies and procedures.

41. At all relevant times, Defendants controlled Plaintiff's and all other Representatives' work schedules, duties, protocols, applications, assignments, and employment conditions.

42. To the extent that Defendants may have had written policies that required their employees to be paid for all hours worked, including overtime, the reality is that Defendants did not follow these policies, which resulted in Representatives, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

43. Defendants required Plaintiff and all other Representatives to use a

computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

44. Defendants instructed Plaintiff and other similarly situated Representatives to be "call ready" the moment their scheduled shifts started. This required Plaintiff and the Representatives to load and log into essential work-related computer programs and applications before the start of their shifts and before they were allowed to clock in so they could be prepared to field calls the moment their shift began.

45. Defendants enforced their "call ready" policy through their uniform attendance, compensation, timekeeping, and schedule adherence procedures applicable to Representatives.

46. Defendants additionally enforced their policy of requiring that all computer programs and applications be open and ready at the start of a Representative's scheduled shift through their schedule adherence and attendance metrics pursuant to which they monitored the Representatives' clock in times in relation to their start-of-shift times, as well as the time the Representatives went into a "ready" status.

47. Defendants enforced these policies and procedures by routinely evaluating, and at times disciplining, the Representatives. This discipline included, but was not limited to, verbal and written warnings, and termination.

48. All of Defendants' Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work, and they could not perform their jobs without them.

49. Similarly, Defendants' Representatives, including Plaintiff, performed work off-the-clock after their scheduled shifts, after clocking out of Defendants' timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

50. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and their Representatives in order to require them to perform pre- and post-shift work off-the-clock.

51. Defendants knew or should have known that Plaintiff and other Representatives were performing this pre- and post-shift work, as it was required by Defendants' training and policies and was necessary for Representatives to perform their primary job duties.

52. Defendants' directive that Representatives only record time spent "call ready" and in alignment with their scheduled shifts, while excluding the herein described pre-and post-shift off-the-clock work, resulted in inaccurate timecards that did not reflect all hours actually worked, in violation of the FLSA's recordkeeping

requirements. See 29 U.S.C. § 211(c).

53. The pre- and post-shift off-the-clock time Plaintiff and all other Representatives spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendants and was integral and indispensable to the Representatives' job responsibilities.

54. At all relevant times, Defendants required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre- and post-shift activities described herein.

55. As a result of the off-the-clock work described herein, Plaintiff and all other Representatives were unlawfully deprived of approximately eighteen (18) to thirty-five (35) minutes of compensation every shift.

56. At all relevant times, Defendants were able to track the amount of time Plaintiff and other Representatives spent in connection with the pre- and post-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed thus breaching their contracts with their Representatives.

57. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

58. Despite knowing Plaintiff and all other Representatives performed this

pre- and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

59. Defendants have known or should have known that the time spent by Plaintiff and other Representatives in connection with the pre- and post-shift activities is compensable under the law.

60. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other Representatives booted up and logged in to their computers each shift, along with the time they entered into the timekeeping system.

61. Because Defendants required their Representatives, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Representatives spent working for Defendants. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they actually worked.

62. Defendants' failure to pay Plaintiff and their Representatives for each hour of work performed and that was required of them as Representatives was a material breach by Defendants.

63. Plaintiff and all other Representatives earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff

and all other Representatives no later than the pay date for the period in which the off-the-clock work was performed.

64. Despite the fact that Plaintiff and all other Representatives performed off-the-clock work pre- and post-shift these off-the-clock hours were not peripheral tasks for which they were not owed compensation. Instead, the off-the-clock hours, which were performed by Plaintiff, and all other Representatives pursuant to not only their agreements with Defendants, but Defendants' verbal and/or written policies, training and direction, constituted principal work activities that were integral and indispensable to their work, and Defendants were contractually obligated to compensate their Representatives for their hours worked at their applicable regular and overtime hourly rates at which they were employed.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

65. Upon arriving to their computers, Defendants' Representatives were trained and required to follow a specific protocol to start up and log into Defendants' network and numerous software programs to access the necessary information to perform their job duties.

66. Before each shift, Representatives were required to undertake essential work tasks, which generally consisted of the following steps: turn on or wake up their computer; log into Microsoft Windows with a username and password; connecting to Defendants' virtual private network ("VPN") with a username and

password; open various programs and applications that were integral and indispensable to their job duties as Representatives, including, but not limited to, Workday, ICOMS, Avaya (phone software), and a proprietary artificial intelligence program which recorded/transcribed conversations).

67. Only once all applications were open and loaded, could Plaintiff and the Representatives clock in.

68. Defendants' Representatives had to complete much, if not all, of this process ***before***: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendants' timekeeping program; and (3) and fielding calls.

69. The boot-up and login process described above took substantial time on a daily basis, ranging from ten (10) to twenty-five (25) minutes per shift or more, depending on how fast/slow the computers, systems and programs were operating.

70. Defendants' Representatives were not compensated for all of this time because, among other things, Defendants prohibited Representatives from clocking into their timekeeping software until a limited and finite number of minutes before the start of their scheduled shifts, and the boot-up process took longer than this amount of time to perform each shift.

71. Thus, in workweeks where Defendants' Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed

herein, Defendants violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40) (overtime gap time); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendants' benefit.

72. The pre-shift off-the-clock work Representatives performed directly benefited Defendants and was integral and indispensable to their job duties and responsibilities.

73. If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "call ready" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

74. Because Defendants' Representatives typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 time their regular rate of pay.

75. Defendants had express and constructive knowledge that their Representatives began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "call ready" and clocked in on time.

76. Defendants knew or should have known that Representatives

performed uncompensated pre-shift boot-up and login work because Defendants required them to be fully "call ready" at the precise start of their scheduled shifts while prohibiting them from recording such time in their recorded hours worked.

**B. <u>Post-Shift Off-the-Clock Work</u>**

70. Pursuant to Defendants' policies, training, and direction, Plaintiff and all other Representatives were required to clock out the moment their scheduled shift concluded when they finished fielding their last customer call for the shift and before completing call documentation, checking and responding to emails, closing programs and applications they used during their scheduled shifts, and shutting down their system.

71. This resulted in Plaintiff and other Representatives performing eight (8) to ten (10) minutes of off-the-clock work every shift.

72. Thus, in workweeks where Defendants' Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendants violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendants' benefit.

73. The post-shift off-the-clock work Plaintiff and other Representatives performed was compensable, directly benefited Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to Representatives' job duties and responsibilities.

### C. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>

74. "Gap time claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

75. Plaintiff and similarly situated Representatives regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

76. During the weeks that Plaintiff and the Representatives did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight-time wages, in breach of Defendants' contracts with their Representatives.

## JOINT EMPLOYMENT ALLEGATIONS

77. At all relevant times, Defendants were, at minimum, joint employers of Plaintiff and other Representatives.

78. At all relevant times, Defendants managed the day-to-day supervision and direction of the Representatives.

79. At all relevant times, Defendants' corporate policies and procedures guided and mandated Plaintiff and the Representatives' jobs.

80. At all relevant times, Defendants maintained the Plaintiff and other Representatives' employment records.

81. The unlawful conduct at issue in this case arises from Defendants' corporate policies for Representatives.

## COMMON ENTERPRISE ALLEGATIONS

82. Two or more businesses or companies are considered a single enterprise if they (1) perform related activities; (2) under unified operations or common control; and (3) for a common business purpose. *See Brennan v. Arnheim & Neely, Inc.,* 410 U.S. 512, 518 (1973); *Brock v. Best Western Sundown Motel, Inc*., 883 F.2d 51, 52 (8th Cir. 1989); *Donovan v. Weber*, 723 F.2d 1388, 1391 (8th Cir. 1984).

83. As discussed herein, Defendants were engaged in a common enterprise relative to the operations and employment of Plaintiff and Representatives.

84. Defendants were engaged in the aforementioned business for the joint purpose of "keeping people connected — through high-speed internet, managed services, smart home solutions, mobile phone service and much more."[6]

85. As discussed herein, Defendants loosely operated in the same or similar manner, under a common name, and through unified or common control. They also advertised collectively as Cox.[7]

## FLSA COLLECTIVE ACTION ALLEGATIONS

86. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former similarly situated Representatives who work or have worked for Defendants at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

87. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside salespersons.

88. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

---

[6] *See* https://jobs.coxenterprises.com/en/learn-about-us/businesses/cox-communications/ (last visited Feb. 5, 2026).
[7] *See* https://www.cox.com/residential/home.html (last visited Feb. 5, 2026).

89. Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid all overtime gap time and/or overtime compensation in workweeks during which they worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock time discussed herein.

90. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work Plaintiff and the proposed FLSA Collective performed.

91. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

92. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all overtime gap time; and

c. Willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective members, have worked for Defendants' benefit.

93. Defendants' unlawful conduct has been widespread, repeated, and consistent.

94. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

95. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members were (1) required to work uncompensated boot-up and log-out time; and (2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable workweeks and overtime for hours worked over forty (40) in a week.

96. Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

97. These similarly situated individuals are known to Defendants, are readily identifiable, and can be located through Defendants' payroll records, which Defendants are required to maintain pursuant to the FLSA. 29 U.S.C. § 2119(c); 29 C.F.R. § 516 *et seq*.

98. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to pursuant to 29 U.S.C. § 216. Unless the Court promptly issues such a notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## RULE 23 ARIZONA STATE LAW CLASS ALLEGATIONS

99. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> *All current and former similarly situated Representatives who work or have worked for Defendants at any location in Arizona at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Arizona Class"). Plaintiff reserves the right to amend this definition if necessary.

100. The members of the Rule 23 Arizona Class are so numerous that joinder of all members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Arizona Class members. Rule 23 Arizona Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

101. There is a well-defined community of interests among Rule 23 Arizona Class members and common questions of law and fact predominate in this action over any questions affecting individual members. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Arizona Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the post-shift time Rule 23 Arizona Class members spent closing all programs, applications, and networks is compensable time under applicable law;

c. Whether Defendants engaged in a policy or practice of failing to pay each Rule 23 Arizona Class member regular wages or minimum wage for each non-overtime hour worked;

d. Whether the Rule 23 Arizona Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof; and

e. Whether Defendants should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating Arizona state wage acts, AMWA and AWPA.

102. Plaintiff's claims are typical of those of the Rule 23 Arizona Class members in that they and all other Rule 23 Arizona Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies and practices, promises and course of conduct as all other Rule 23 Arizona Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Arizona Class members.

103. Plaintiff will fully and adequately protect the interests of the Rule 23 Arizona Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Arizona Class members.

104. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Arizona Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

105. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendants have

advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

106. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

107. Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Arizona Class and declaratory relief is appropriate in this case with respect to the Rule 23 Arizona Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 NATIONWIDE CLASS ALLEGATIONS**

108. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> *All current and former similarly situated Representatives who work or have worked for Defendants during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

109. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.

Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

110. There is a well-defined community of interests among the Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the post-shift time Rule 23 Nationwide Class members spent documenting calls and closing all programs, applications and networks is compensable time under applicable law;

c. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

111. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal

theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

112. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

113. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

114. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

115. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule

entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

116. Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

117. Plaintiff re-alleges and incorporates all previous paragraphs herein.

118. At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

119. At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

120. At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

121. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

122. Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

123. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

124. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

125. At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

126. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was significant.

127. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207. Further, all "overtime gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

128. Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA collective members for all work activities but did not. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

129. As a result of Defendants' willful failure to compensate Plaintiff and the putative FLSA Collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq*., including but not limited to 29 U.S.C. §§207(a)(1), 215(a), and 29 C.F.R. §§778.104. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

130. As a result of the foregoing, Plaintiff and all others were similarly situated are entitled to backpay as well as liquidated damages in an amount equal to

their back pay. As a result of Defendants' FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period. The exact amount can be readily determined using payroll and other employment records Defendants are statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

131. Plaintiff and all others similarly situated are entitled to backpay, liquidated damages (double damages), interest, attorneys' fees and costs, and all other relief just and appropriate under the statute. 29 U.S.C. § 216(b).

**COUNT II**
**RULE 23 ARIZONA CLASS ACTION**
**VIOLATIONS OF THE ARIZONA MINIMUM WAGE ACT,**
**A.R.S. §§ 23-363, *et seq.* ("AMWA"),**
**THE ARIZONA WAGE PAYMENT ACT,**
**A.R.S. §§ 23-350, *et seq.* ("AWPA") ("ARIZONA WAGE ACTS")**

132. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

133. At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of The Arizona Minimum Wage Act ("AMWA"), A.R.S. §§ 23-363, *et seq.*, and the Arizona Wage Payment Act ("AWPA"), A.R.S. §§ 23-350, *et seq.*, and Plaintiff and the Rule 23 Arizona Class are and/or were employees entitled to the protections of both statutes.

134. The AWPA requires employers to pay employees compensation for

every hour worked in a workweek. *See* A.R.S. §§ 23-350(5), 23-351(C), 23-355(A).

135. The AMWA requires employers to pay employees at least the applicable minimum wage for all hours worked, A.R.S. § 23-363(A), and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). A.R.S. § 23-391; 29 U.S.C. § 207.

136. A.R.S § 23-355(A) provides that "if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

137. A.R.S. § 23-364(D) requires employers to retain payroll records showing the hours worked for each day worked, and the wages paid to all employees for a period of four years and that a "[f]ailure to do so shall raise a rebuttable presumption that the employer did not pay the required minimum wage rate[.]"

138. A.R.S. § 23-364(F) provides that "any employer who violates recordkeeping …requirements…shall be subject to a civil penalty of at least $250 dollars for a first violation, and at least $1000 dollars for each subsequent or willful violation…"

139. Defendants violated the Arizona Wage Acts by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Arizona Class for the time spent on the off-the-clock work activities described in this Complaint.

140. Defendants also violated the AMWA by failing to maintain required payroll records accurately reflecting the hours Plaintiff and the Rule 23 Arizona Class worked for Defendants.

141. Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

142. As a result, Plaintiff and the Rule 23 Arizona Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Arizona Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the Arizona Wage Acts at an amount to be proven at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

143. Plaintiff re-alleges and incorporates all previous paragraphs herein.

144. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

145. Evidence of these contracts includes Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants'

possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

146. For example, Defendants offered to compensate Plaintiff at a minimum of $21.00 per hour if he agreed to perform services for Defendants as a Representative. Plaintiff accepted Defendants' offer and performed his duties as a Representative in reliance on the offers.

147. Defendants breached their contractual promises by failing to pay Representatives at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

148. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

149. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

150. By not paying Plaintiff and every other Rule 23 Nationwide Class

member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

151. Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

152. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

153. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

154. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT/QUANTUM MERUIT**

155. Plaintiff re-alleges and incorporates all previous paragraphs herein.

156. This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

157. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

158. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

159. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

160. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

161. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

162. Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class for all of their work, which included that which they performed up to, but not reaching, forty (40) hours per week, and at a rate that averaged out to more than the applicable minimum wage.

163. Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

164. Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

165. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

166. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Arizona Class) pursuant to rule 23(b)(2) and (b)(3) with respect to Plaintiff's Arizona state law claims (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count III);

d. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to rule 23(b)(2) and (b)(3 with respect to Plaintiff's unjust enrichment claim (Count IV);

e. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, phone numbers, and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

f. An Order designating Plaintiff as representative of the FLSA Collective, the Rule 23 Arizona Class and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

g. An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations cited herein;

h. An Order declaring Defendants' violations of the FLSA were willful;

i. An Order declaring Defendants violated Arizona state wage-and-hour laws and regulations cited herein;

j. An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established

(contractual) regular hourly rate;

k. An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiff and the members of the Rule 23 Nationwide class;

l. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective, the Rule 23 Arizona Class, and the Rule 23 Nationwide Class, the full amount of damages and penalty damages available by law;

m. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

n. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

o. An Order awarding such other and further relief as this Court deems appropriate.

Dated: April 3, 2026

Respectfully Submitted,

*/s/ Andrew Weiner*
Andrew Weiner (GA Bar No. 808278)
Jeffrey Sand (GA Bar No. 181568)
WEINER & SAND LLC
6065 Roswell Road, Suite 700-121
Sandy Springs, Georgia 30328
Telephone: (404) 254-0842
aw@wsjustice.com
js@wsjustice.com

Jason J. Thompson (P47184)
Kathryn E. Milz (IL 6297213)*
SOMMERS SCHWARTZ, P.C.
One Town Square, 17th Floor
Southfield, Michigan 48076
Telephone: (248) 355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*

**Pro Hac Vice application forthcoming*

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: April 2, 2026

Respectfully Submitted,

*/s/ Andrew Weiner*
Andrew Weiner